

# SUPREME COURT OF ARKANSAS

No. CR-12-218

| | |
|---|---|
| FREDERICK DWAYNE MASON<br>APPELLANT | **Opinion Delivered** December 5, 2013 |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>SEVENTH DIVISION,<br>[NO. CR–07–1780] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BARRY SIMS, JUDGE |
| | <u>AFFIRMED</u>. |

**JIM HANNAH, Chief Justice**

Appellant, Frederick Dwayne Mason, appeals from the denial of his petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37. Appellant was convicted of two counts of aggravated robbery, two counts of theft of property, and one count of second-degree battery, and he was sentenced to a total of 660 months in the Arkansas Department of Correction. The court of appeals affirmed on direct appeal. *See Mason v. State*, 2009 Ark. App. 794. Appellant then filed a petition for postconviction relief, which the circuit court denied following a hearing. Appellant alleges the following errors on appeal: (1) that trial counsel was ineffective for failing to move for a directed verdict, (2) that trial counsel was ineffective for "opening the door" to prejudicial testimony, and (3) that trial counsel was ineffective for failing to investigate and prepare for trial. We affirm the circuit court's order.

On appeal from a circuit court's ruling on a petitioner's request for Rule 37 relief, this

SLIP OPINION

court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *E.g.*, *Prater v. State*, 2012 Ark. 164, at 8, 402 S.W.3d 68, 74. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*, 402 S.W.3d at 74.

The criteria for assessing the effectiveness of counsel were enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first show that counsel's performance was deficient. *Williams v. State*, 2011 Ark. 489, at 4, 385 S.W.3d 228, 232. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.*, 385 S.W.3d at 232. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*, 385 S.W.3d at 232. Second, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.*, 385 S.W.3d at 232. In doing so, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, which means that the decision reached would have been different absent the errors. *Id.*, 385 S.W.3d at 232. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*, 385 S.W.3d at 232–33. Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial

SLIP OPINION

process that renders the result unreliable. *Id.*, 385 S.W.3d at 233.

In his first point on appeal, appellant contends that trial counsel was ineffective because he failed to move for a directed verdict at trial. He claims that the proof presented at trial was insufficient to support a conviction because there was no direct evidence of his involvement in the crimes. Specifically, he contends that victim Lionel Hampton's identification of him as a perpetrator was unreliable because Hampton could testify only that he saw appellant exiting a residence some distance away from the crime scene and driving away in a vehicle that resembled the dark Taurus that he saw on his street after he had been robbed. According to appellant, Hampton's cousin told Hampton that appellant was the culprit and that Hampton did not actually see appellant during the commission of the crimes.

At trial, Hampton testified that after he had been robbed in his home, he looked out the window and saw a dark-colored, or black, Taurus exiting his street. Hampton stated that he then called his cousin for a ride, and they drove around for about an hour looking for the vehicle. Hampton testified that they located the vehicle parked at a nearby house and saw appellant walk out of the house and toward the vehicle. Hampton said that his cousin "pretty much identified him for me." Little Rock Police Detective Robert Martin testified that Hampton contacted him the day after the robbery and told him that he had been robbed by a man in his neighborhood named "Pig." Martin contacted several officers who worked in that neighborhood, and one of the officers told him that "Pig" was known to police as Fred Mason. Martin included a photo of appellant in a lineup shown to Hampton, and according to Martin, Hampton "immediately and positively identified Mr. Mason as . . . one of the



three that robbed him." Hampton also testified that he picked appellant from a photo lineup as one of the three men who had robbed him. According to Hampton, appellant put a gun to his chest, held him down on a couch, and asked him for his keys.

Appellant's trial counsel, John May, testified at the postconviction hearing that he did not move for a directed verdict because appellant had been identified as one of the robbers, and it was for the jury to decide if that identification was credible. The State contends that trial counsel was correct, that the circuit court could not have granted a directed verdict even if trial counsel had moved for one, and that the appellate court could not have reversed appellant's conviction based on insufficient evidence. We agree. When a witness makes a positive identification of a suspect, any challenge to the reliability of the identification becomes a matter of credibility for the fact-finder to determine. *E.g.*, *Stipes v. State*, 315 Ark. 719, 721, 870 S.W.2d 388, 389 (1994). The circuit court is not to assess credibility or resolve conflicts in the testimony in considering a directed-verdict motion. *E.g.*, *Smith v. State*, 337 Ark. 239, 245, 988 S.W.2d 492, 495 (1999); *see also State v. Long*, 311 Ark. 248, 251, 844 S.W.2d 302, 304 (1992) ("[W]hen a trial court exceeds its duty to determine the sufficiency of the evidence by judging the credibility of the evidence, it commits an error that requires correction."). Any inconsistencies in testimony are for the jury to resolve, and the weight to be given to witness-identification testimony is for the jury to decide. *See, e.g.*, *Davenport v. State*, 373 Ark. 71, 78, 281 S.W.3d 268, 273 (2008). Here, because a directed-verdict motion would not have been successful, appellant cannot demonstrate that trial counsel was ineffective for failing to make that motion. *See Lowe v. State*, 2012 Ark. 185, at 7, ___ S.W.3d ___, ___

(per curiam) (stating that trial counsel cannot be ineffective for failing to make an argument or objection that is without merit). Accordingly, he is not entitled to postconviction relief on that basis.

Appellant next contends that trial counsel was ineffective for "opening the door" to prejudicial testimony when he asked Hampton on cross-examination if he had once reported to the police that he had been robbed by appellant and appellant's brother, Nicholas Mason. Hampton stated that he thought the Mason brothers had previously robbed him, but he was not sure. When trial counsel presented evidence that appellant's brother had been incarcerated at the time of the previous robbery, Hampton testified that one of the men who had previously robbed him resembled appellant's brother. Appellant argues that there was "no possible benefit to be gained here, and no fathomable, let alone reasonable, strategic or tactical basis" for trial counsel's line of questioning.

At the postconviction hearing, trial counsel testified that he was trying to show that Hampton was biased against the Mason brothers because of his belief that they had previously robbed him and that he was also trying to "create confusion of which brother did it." Trial counsel testified, "It was my intention to make the jury think about was it the brother, which brother. It might've been his brother that did it instead of . . . Frederick himself. . . . I was trying to suggest to the jury that it was Frederick's brother that did it, was my trial strategy." Trial counsel stated that he did not tell the jury that appellant had previously robbed Hampton. Rather, he stated, "I[t] was my strategy to plant the seed in the jury's mind that it was possibly the brother that did it and how did they know the difference." Trial counsel

SLIP OPINION

also stated that the evidence suggested that Hampton held a grudge against the Mason brothers because of the previous robbery and that he was trying to "name these guys again."

The manner of questioning by a witness is by and large a very subjective issue about which different attorneys could have many different approaches. *E.g.*, *Nelson v. State*, 344 Ark. 407, 414, 39 S.W.3d 791, 796 (2001). When a decision by counsel is a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then counsel's decision is not a basis for postconviction relief under Rule 37.1. *E.g.*, *Croy v. State*, 2011 Ark. 284, at 5, 383 S.W.3d 367, 371 (2011) (per curiam). A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and a claimant has the burden of overcoming this presumption by identifying specific acts or omissions of counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Id.*, 383 S.W.3d at 371.

In the instant case, Hampton identified appellant as the perpetrator who held a gun on him and demanded his keys during the robbery. Trial counsel attempted to discredit Hampton's testimony by showing that Hampton had earlier misidentified the Mason brothers, that he had a grudge against them, and that he may have been mistaken about who robbed him this time. We conclude that trial counsel's tactical decision about how to cross-examine Hampton was supported by reasonable professional judgment. As such, appellant is not entitled to postconviction relief on this point.

In his final point on appeal, appellant contends that trial counsel was ineffective for

failing to investigate and prepare for trial. Specifically, appellant contends that trial counsel was ineffective because he did not review the State's case file prior to trial. In support of this claim, appellant asserts that, on the day before trial, trial counsel asked for a continuance so he could interview appellant's brother, even though the State had already informed trial counsel that appellant's brother was a "key player" in the case.[1] Appellant further asserts that trial counsel was not adequately prepared to cross-examine victim Dettrus Johnson because he did not receive a transcript of Johnson's interview with the police until after the trial had begun.[2] According to appellant, if trial counsel had read the case file, he would have interviewed appellant's brother and he would have realized that he did not have a transcript of Johnson's statement. For his part, trial counsel testified at the postconviction hearing that he reviewed the case file prior to trial "probably 20-plus times at least."

To prevail on his claim that trial counsel was ineffective for failing to adequately investigate and prepare for trial, the petitioner must show how a more searching pretrial investigation or better preparation would have changed the results of the trial. *See, e.g.*, *Bond v. State*, 2013 Ark. 298, at 9, ___ S.W.3d ___, ___ (per curiam). Specifically, the petitioner

---

[1]The record reflects that on the day before trial, trial counsel sought a continuance so appellant's brother could be extradited from South Carolina, where he was incarcerated.

[2]On the day of trial, trial counsel moved to compel the State to produce a transcript of Johnson's statement. The prosecutor informed the circuit court that the transcript had been "lost in the shuffle at the police department" and would be provided to trial counsel before Johnson testified. The circuit court told counsel that it would take a break before Johnson testified to allow trial counsel time to review the transcript. Trial counsel testified at the postconviction hearing that, after he received the transcript, he "read it as many times as I could." He also testified that the circuit court called a break before Johnson testified.

must delineate the actual prejudice that arose from the alleged failure to investigate and prepare for trial and demonstrate a reasonable probability that additional preparation and the information that would have been uncovered with further investigation could have changed the outcome of the trial. *See, e.g.*, *Bryant v. State*, 2013 Ark. 305, at 9, ___ S.W.3d ___, ___ (per curiam).

Here, however, appellant does not state the relevant facts that trial counsel would have discovered had he adequately investigated and prepared the case. As such, his allegations are conclusory and will not provide a basis for postconviction relief. This court has stated that, as with any other claim of ineffective assistance of counsel, a petitioner cannot succeed merely by alleging that counsel was not prepared or did not spend enough time on his or her case. *Camargo v. State*, 346 Ark. 118, 129, 55 S.W.3d 255, 263 (2001). Rather, the petitioner still must show the evidence or witnesses that would have been discovered had counsel properly investigated the case and that, but for counsel's lack of preparation, there is a reasonable probability that the outcome of his trial or sentence would have been different. *Id.*, 55 S.W.3d at 263. Because appellant has failed to make such a showing, he is not entitled to postconviction relief on this point.

The circuit court did not clearly err in denying appellant's petition for postconviction relief. Accordingly, we affirm.

Affirmed.

*John Wesley Hall*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.